IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DONALD KAULIA, | ) CIVIL NO. 05-00290 JMS/LEK |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) ORDER GRANTING DEFENDANTS' |
| COUNTY OF MAUI, DEPARTMENT | ) MOTIONS FOR PARTIAL |
| OF PUBLIC WORKS AND WASTE | ) SUMMARY JUDGMENT AND |
| MANAGEMENT; DAVID GOODE, | ) FOR SUMMARY JUDGMENT |
| Director of the Department of Public | ) |
| Works and Waste Management; | ) |
| TRACEY TAKAMINE, Chief of the | ) |
| Waste Water Branch; JOHN JAKE | ) |
| KOSTRICK, Supervisor, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## ORDER GRANTING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Donald Kaulia ("Plaintiff") filed suit against Defendants David Goode ("Goode"), Tracey Takamine ("Takamine"), John Jake Kostrick ("Kostrick"), and the County of Maui Department of Public Works and Waste Management ("County") (collectively "Defendants"), alleging claims of discrimination, retaliation, and hostile work environment under 42 U.S.C. § 1981 (as amended), Title VII, and Hawaii Revised Statutes ("HRS") §§ 368 and 378.

Defendants move for partial summary judgment claiming that Plaintiff's § 1981 and punitive damages claims against Goode and Takamine should be dismissed because Goode and Takamine never actively discriminated against Plaintiff and that, even if they had, they are entitled to qualified immunity; that Plaintiff's § 1981 claim for alleged negative job references is untimely; and that Plaintiff's Hawaii state law claims are time-barred due to Plaintiff's failure to provide written notice to the County as required under HRS § 46-72.  Defendants also move for summary judgment as to the Title VII claims against the County; the § 1981 claims against the County and Kostrick; and the punitive damages claim against Kostrick arguing that there are no genuine issues of material fact and Defendants are entitled to summary judgment as a matter of law.  For the following reasons, the court GRANTS the Defendants' motions for partial summary judgment and for summary judgment.

## II. __BACKGROUND__

### A.      **Factual Background**

Plaintiff, who is Hawaiian, is a former employee of the County of Maui Department of Public Works, Wastewater Management Division.[1]  Plaintiff was employed as a Wastewater Plant Worker at the Lahaina Wastewater

---

[1]  Plaintiff's Wastewater Plant Worker position is represented by the United Public Workers Union Unit 1.  Defs'. Mot. for Partial Summ. J., Takamine Decl. ¶ 4.

Treatment Plant ("Lahaina Plant") from October 16, 1998 until April 19, 2002

when he resigned.[2]   Plaintiff's primary duties included ground maintenance;

treatment plant and pump station maintenance; and housekeeping duties.[3]   The

Wastewater Treatment Plant Worker Position Description states that "[t]he

performance of [these] function[s] is the reason that the job exists," and notes that

---

[2]  Plaintiff's last day working at the Lahaina Plant was February 15, 2002.  Plaintiff tendered a resignation letter to the Department of Corporation Counsel, County of Maui by certified mail dated April 19, 2002 stating that

> Due to the circumstances of recent with-holding paychecks, hardship, pain and suffering, intimidation, harrassment [sic], discrimination, employer violations, denial of transfer, discrimination, fraud, stress, invasion of privacy, timecard violations, defamation of character and safety, I hereby submit my employment resignation effective immediately from the Lahaina Wastewater Reclaimation [sic] Facility, a division of the Public Works Department of Wastewater Management at the County of Maui.
>
> I hold my supervisor and the entire staff and management within my Division of employment totally responsible.  The investigations surrounding the circumstantial facts afforementioned [sic] will continue with representation by my assigned legal counselors.

Defs'. Mot. for Partial Summ. J. Ex. A.
      As part of a December 3, 2002 settlement of six workers' compensation claims filed by Plaintiff between November 30, 1999 and March 29, 2002, Plaintiff acknowledged that his employment with the County was terminated and agreed to waive all rights to re-employment under HRS Chapter 386.  *See* Defs'. Mot. for Partial Summ. J. Ex. B at 10; Defs'. Mot. for Partial Summ. J., Tipton Decl. ¶ 4.

[3]  Ground maintenance work includes trimming grass and hedges, spreading topsoil, raking, watering and fertilizing, spraying plants and flowers with insecticides, and the like. Defs'. Mot. for Partial Summ. J. Ex. C at 31.  Treatment and pump station maintenance work includes removing and pulverizing dried sludge, cleaning and maintaining sludge drying sand beds, draining and cleaning holding ponds and tanks, maintenance and repair work on treatment plant and pump station equipment, painting buildings and equipment, and the like.  Defs'. Mot. For Partial Summ. J. Ex. C at 31.  Housekeeping duties involve cleaning bathrooms, floors, windows, and walls.  Defs'. Mot for Partial Summ. J. Ex. C at 32.

the position may involve "work in [a] hazardous, filthy and obnoxious working environment . . . ."  Defs'. Mot. for Partial Summ. J. Ex. C at 31.  Goode was the Director of the Maui County Department of Public Works from September 6, 2000 to January 2, 2003 and he is no longer employed by the County of Maui.  *See* Defs'. Mot. For Partial Summ J., Krieg Decl. ¶ 3.  Takamine was temporarily assigned as the County of Maui's Chief of the Wastewater Reclamation Division from September 1, 2001 to February 5, 2002.  He held the Chief position outright from February 6, 2002 to August 21, 2005.  *See* Defs'. Mot. For Partial Summ. J., Takamine Decl. ¶ 3.  Kostrick was Plaintiff's Supervisor at the Lahaina Plant.

The following is a summary of facts relating to Plaintiff's various allegations of discrimination and retaliation:

### 1. *Denial of Transfer Requests*

Plaintiff alleges that the County improperly denied his three requests for transfer to a different location.  The first such instance occurred in April, 2001.  At that time, Ron Riska ("Riska"), the then-Chief of the Wastewater Reclamation Division, and Cheryl Marsh ("Marsh"), a Personnel Specialist from the Department of Personnel Services, interviewed employees regarding rumors of threats of violence or possible violent uprisings due to a manpower shortage at the Lahaina Plant.  Plaintiff, who indicated that he was not afraid of Kostrick or his

alleged bullying,[4] was not transferred.  Others, including an African-American

employee and a Hawaiian employee, were transferred to different locations.

Plaintiff also requested transfers in December, 2001 and January,

2002.  During this time period, Plaintiff was rarely at work.[5]  On January 4, 2002,

Takamine and Assistant Wastewater Operations Program Superintendent Al Souza

("Souza") held a meeting with Plaintiff during which they informed him that the

Kihei Wastewater Plant Worker position they had previously offered was no

longer available.  However, Takamine and Souza told Plaintiff they could place

him outside of the Wastewater Division, and suggested a position with the Parks

and Recreation Division.  Plaintiff told Takamine and Souza that he would

consider their offer.  Defs'. Mot. for Summ. J. Ex. L.

On January 24, 2002, Souza advised Plaintiff that "there are no

openings within the Division that you would be able to transfer into."  Defs'. Mot.

for Summ. J. Ex. M.  However, Takamine continued to look for a transfer position

---

[4]  Kostrick's bullying and threats of violence were not directed solely at Plaintiff.  Indeed, as Plaintiff himself noted, Kostrick "makes bully with everybody."  Kaulia Dep. Tr. 184.

[5]  Plaintiff did not work from December 4 to December 17, 2001.  Defs'. Mot. for Summ. J. Ex. I; Defs'. Mot. for Summ. J., Takamine Decl. ¶ 4.  On December 18, 2001, Plaintiff came to work but left without notifying a supervisor when he heard co-workers talking about an argument Kostrick had with other co-workers the previous week.  Defs'. Mot. for Summ. J. Ex. J; Defs'. Mot. for Summ. J., Takamine Decl. ¶ 20.  During January and February 2002, Plaintiff's timecards reveal sporadic work, sick days, and absence from work due to "vacation/car failure."  Plaintiff's last day of actually working at the Lahaina Wastewater Plant was February 15, 2002.

for Plaintiff, writing a letter to Goode to request his assistance to determine

whether Kaulia would qualify for any other open positions at his pay grade within

the Department of Public Works.  Defs'. Mot. for Summ. J. Ex. N.  Goode

responded to Plaintiff that "there are no available Wastewater Treatment Plant

Worker positions currently available at any of the other plants.  If you are

interested in transferring or moving to any other position . . . you should let us

know . . . ."  Defs'. Mot. for Summ. J. Ex. O.  Plaintiff never indicated that he was

interested in transferring to another department, and instead took a stress-related

leave of absence from work.  Kaulia Dep. Tr. 166-67.

### 2.     *"Dumb Hawaiian" Comments Directed at Plaintiff*

Plaintiff alleges that Kostrick twice called him a "dumb Hawaiian."[6]

The first incident occurred during Plaintiff's first week on the job.  At that time,

Kostrick was not yet his supervisor.  Kostrick nonetheless gave Plaintiff work

assignments.  Plaintiff followed Kostrick's instructions for two days before being

told that Kostrick did not have the authority to give Plaintiff assignments.

Plaintiff alleges that Kostrick referred to him as a "dumb Hawaiian" at this time.

Plaintiff explains that he "took this personal and confronted [Kostrick] and made

myself clear to him how personal I could get legally and can take this matter

---

[6] Kostrick denies making these comments, *see* Defs'. Mot. for Summ J., Kostrick Decl. ¶ 9, but the court construes all factual disputes in favor of the non-moving party.

physically outside of the premises one on one.  [Kostrick] stood corrected and

apologized.  Since then, he and I had an understanding til this day."  Defs'. Mot.

for Summ. J. Ex. Q at 1.[7]

The second incident occurred either in 1998 or 2001 when Plaintiff

was cutting a tree.  As he explains it, "everybody is looking and everybody was

laughing, because I was cutting one tree in an awkward position."  Kaulia Dep. Tr.

82-83.  Kostrick then allegedly referred to Plaintiff as a "dumb Hawaiian."

### 3.      *"Haole Staff Car" Golf Cart*

In late October, 1998, around the time that Plaintiff began working at

the Lahaina Plant, Kostrick brought a golf cart to the Lahaina Plant for the

workers to use to travel across the 12-acre property.  Plaintiff alleges that Kostrick

put a sign or sticker on the cart[8] that read "Haole Staff Car."[9]  Kaulia Dep. Tr. 97.

Everyone at the plant was allowed to drive the cart and no one complained to

Kostrick about the sticker.  When an EEOC investigator indicated that the cart

could be a problem, it was removed.  The last time that Plaintiff saw the cart was

---

[7]   In an email written at that time, Plaintiff referred to the incident as "the game [Kostrick] plays on new hires" and noted that he "[did] not have any personal conflict or reason of complaint" regarding Kostrick's behavior.  Defs'. Mot. for Summ. J. Ex. Q at 1.

[8]   For his part, Kostrick testified that the bumper sticker -- faded and barely visible -- was already on the golf cart.

[9]   "Haole" means "foreign" or "foreigner" in Hawaiian.  The term is used in modern day vernacular to refer -- either descriptively or derisively -- to Caucasians.

in April, 2001.

### 4.    *General Comments Regarding Non-Caucasians*

Plaintiff also alleges that Kostrick stated that he would hand pick his assistant supervisors "and they got to be white . . . oh, no other colored people here.  No way.  Got to have white people."  Kaulia Dep. Tr. 157.  However, the individuals Kostrick selected to be his assistant supervisors, were, in fact, both Filipino.

### 5.    *Denial of Training*

Plaintiff claims that he was denied the opportunity to take certain training courses necessary for his advancement.  Plaintiff does not specify what training courses he was denied or when these supposed occurrences took place. Indeed, Plaintiff apparently did attend training and received a certificate upon completion of his course.  Plaintiff himself turned down opportunities for other on-site training.  Kostrick Dep. Tr. 27-28, 47; Defs'. Mot. for Partial Summ. J. Ex. XX; Defs'. Mot. for Summ. J. Ex. G.  Other training which would allow Plaintiff to advance was available through a correspondence class which Plaintiff presumably could have completed at any time.  There is no indication that Plaintiff did so.  Kostrick Dep. Tr. 27-28.

### 6.    *Plaintiff Placed on Administrative Leave*

On June 25 and again on June 26, 2001, Plaintiff sent Kostrick a fax stating that he would not be at work.  *See* Defs'. Mot. for Summ. J. Exs. S & T. Kostrick, who received the faxes in the break room, apparently made a comment in front of other employees that he would deny Plaintiff's leave requests based on union and departmental rules[10] and the existing manpower shortage.  Plaintiff also claims that Kostrick stated that he was denying Plaintiff's leave request because of his discrimination complaint and "[a]ll the B.S. [Plaintiff] is giving the [C]ounty."[11]  Pl's. Mem in Opp'n, Kaulia Decl. ¶ 41. When Plaintiff heard of Kostrick's comments, he became enraged, claiming that his privacy had been violated and that he had been defamed.  Plaintiff confronted Kostrick, pounding on Kostrick's office door, calling Kostrick a "fucking haole" and a liar, and stating "you want see some stress get out here now.  Now.  Now.  Call the cops, I'm going to beat your ass you fucka."  *See* Kaulia Dep. Tr. 186; Defs'. Mot. for Summ. J. Ex. W at 2; Defs'. Mot. for Summ. J., Kostrick Decl. ¶ 22.  Although Plaintiff was

---

[10]   Both the County's agreement with the UPW Union and Department of Public Works rules require employees to receive approval in advance of leave requests.  *See* Defs'. Mot. for Summ. J. Exs. U & V.

[11]   Plaintiff did not personally hear Kostrick make these statements.  Instead, Plaintiff declares that he heard of the alleged statements second-hand through a co-worker.  However, because Plaintiff neglected to include a declaration from any person present when Kostrick supposedly made these statements, Plaintiff only submits inadmissible hearsay.

not disciplined for this behavior, he was placed on paid administrative leave.

Kaulia Dep. Tr. 90.

### 7.   *Allegations of Workplace Violence*

The record reveals that in October, 2000 and sometime prior to March, 2001, Kostrick threatened a Caucasian and an African-American employee with violence.  Neither incident involved Plaintiff.

Plaintiff alleges in his Complaint that Kostrick also threatened him. However, Plaintiff later admitted that no County employee had ever physically threatened him personally during the course and scope of his employment.  *See* Defs'. Mot. for Summ. J. Ex. Z at 16.  When Plaintiff was asked about his claim of threats of physical violence during his deposition, Plaintiff clarified that he was referring to the instances, discussed *supra*, when Kostrick called him a "dumb Hawaiian."  Plaintiff's own description of one such instance indicates that it was Plaintiff -- and not Kostrick -- who impliedly threatened violence.  As Plaintiff explained, "I just threw down my shovel, and I made my gesture, you know.  We get - we get at this point where we get mad, right.  And then he just said, go ahead, try me.  And I just walked away, because I knew in my mind, if I hit him, I'm fired."  Kaulia Tr. Dep. 177-78.

10

### 8.    *Failure to Interview Plaintiff*

In the fall of 2000, threats of workplace violence due to the manpower shortage at the Lahaina Plant began surfacing.  In April, 2001, Lahaina Plant management arranged to interview employees regarding the rumors.  Plaintiff's name was apparently inadvertently left off the list of interviewees and he had to request that he be assigned an interview.  *See* Defs'. Mot. for Summ. J. Ex. BB.  The names of two other Caucasian employees were also omitted from the list.  Defs'. Mot. for Summ. J., Marsh Decl. ¶ 20.  Other Hawaiians were included on the list of interviewees.  *Id.*  Additionally, other employees who had previously complained of the manpower shortage were on the list of interviewees.  Defs'. Mot. for Summ. J., Takamine Decl. ¶ 17.

Plaintiff, however, was personally offended by the omission of his name from the list.  When Riska heard that Plaintiff was offended, he called Plaintiff to apologize for the oversight.  Riska also mailed Plaintiff a written letter of apology on May 17, 2001.  Plaintiff was included on a later schedule of interviews on April 27, 2001.

### 9.    *Failure to Provide Plaintiff with Work Boots and a Photo I.D. Badge*

As a plant worker under union contract, Plaintiff was entitled to work boots.  *See* Defs. Mot. for Summ. J. Ex. NN.  Under the UPW contract, the County

receives a bid from a vendor to provide the work boots at a set price.  When an

employee needs a new pair of boots, he is given a voucher to give to the vendor.

The vendor then submits the voucher to the County to receive payment.  Defs'.

Mot. for Summ. J., Takamine Decl. ¶ 18.  Plaintiff was issued work boots on

October 20, 1999 and January 15, 2000.  Kaulia Dep. Tr. 137.  Plaintiff alleges

that the County failed to provide him with work boots after this point and that

"everybody got their shoes but me."  Kaulia Dep. Tr. 134-35.

Employees of the Lahaina Plant were issued a photo I.D. upon

commencement of work.  Plaintiff was never issued this badge, despite requests

from two of his supervisors to management.  Dennis Schwind ("Schwind"),

Executive Assistant to the Managing Director, County of Maui, explained that

"not every employee receives a laminated official County photo identification

card.  Employees are only issued ID badges if they need access to a secure facility

which uses some sort of automatic entry system or need to be identified as a

County employee."  Defs'. Mot. for Summ. J., Amended Schwind Decl. ¶ 11.

Plaintiff did not file complaints regarding the failure to provide him

with work boots or an I.D. badge through either the County or union grievance

process.

12

### 10.    *Delay in Processing Disability Paychecks*

Plaintiff completed a workplace compensation form for stress and psychological injuries sustained on the job on May 7, 2001.  *See* Defs'. Mot. for Summ. J. Ex. FF.  Plaintiff's request was initially denied pending an independent psychological examination.  *See* Defs'. Mot. for Summ. J. Ex. GG.  However, because Plaintiff did not have accumulated sick or vacation time, the County determined that Plaintiff should be eligible to receive temporary total disability benefits.  *See* Defs'. Mot. for Summ. J. Ex. HH.  Worker's compensation benefits have a three-day waiting period to be processed, must be cut by hand, and, depending on the circumstances, do not amount to 100% of the worker's wages.

Plaintiff acknowledges that he received the full amount of worker's compensation benefits.  Plaintiff nonetheless complains that the three-day waiting period and the process of picking up and depositing the worker's disability checks (rather than receiving them through direct deposit, the manner in which he received his wages) constituted unlawful discrimination.

### 11.    *Corrections to Paychecks*

When Plaintiff filed worker's compensation claims, the County mistakenly continued to pay him his regular paychecks in addition to the worker's compensation payments.  *See* Defs'. Mot. for Summ. J. OO.  After the error was

discovered, the County sent Plaintiff a notice, dated December 28, 2001,

requesting that Plaintiff authorize the County to withhold $100 per paycheck as

reimbursement of the overpayments made to him.  Plaintiff and his union

representative received the supporting paperwork and agreed that there were

improper overpayments.  After a minor adjustment as to the amount, Plaintiff

authorized the withholding as requested by the County.  *See* Defs'. Mot. for

Summ. J. Ex. PP; Kaulia Dep. Tr. 231-32.

### 12.    *Work Assignments*

Plaintiff's plant worker position involved dirty manual labor.  At the

time that Plaintiff was hired, there were two Wastewater Plant Workers.  Kaulia

Dep. Tr. 63.  Plaintiff's Caucasian co-worker, Carl Roberts ("Roberts"), based on

seniority, was assigned to fill in when workers above the Wastewater Plant

Worker level were absent or their positions vacant.  Roberts later resigned,

initially creating a vacancy in the senior Wastewater Plant Worker position.

However, Roberts' former position was re-allocated to an Assistant Wastewater

Treatment Plant Operator position, leaving only one Wastewater Plant Worker

position.  Plaintiff continued to hold this position and was charged with the

responsibilities formerly divided between both Wastewater Plant Workers.

However, Plaintiff was never required to perform overtime work, and any

overtime work he did perform was entirely voluntary.  Kaulia Dep. Tr. 71-72.

### 13.   *General Workplace Mayhem*

A review of the totality of the record indicates that the Lahaina Plant was a uniquely difficult, unorganized, uncivil, and violent workplace.  There were manpower shortages, rumors of violence, disputes, and friction leading some supervisors to wear bullet proof vests to work.  Pl's. Mem in Opp'n, Kaulia Decl. ¶ 55.  Employees of different races suffered this environment equally.  *See, e.g.*, Kaulia Dep. Tr. 111, 186 (Plaintiff admits that Kostrick regularly swore at employees of all races and that Plaintiff would swear back at Kostrick); *id.* at 66, 158 (citing two instances in which Kostrick was allegedly involved in threats of violence, once with a Caucasian employee and once with an African-American employee).

### 14.   *Parking Ticket on Brother-in-Law's Rental Car*

Plaintiff's brother-in-law rented a car which he parked on Plaintiff's property.  Plaintiff's brother-in-law was issued a ticket on December 19, 2001.  Plaintiff considered the ticket to be a retaliatory threat and wrote to the FBI seeking their protection.  Kaulia Dep. Tr. 204-05.

## B.   Procedural Background

On December 6, 2001, Plaintiff filed a Complaint for violations of

Title VII with the Equal Employment Opportunity Commission ("EEOC").  An

Amended EEOC Complaint was filed on December 14, 2001.

Plaintiff filed the present suit on April 22, 2005, a little over three

years after his resignation and a little over three years and four months after he

filed his EEOC Complaint.  Since that time, the claims in Plaintiff's Complaint

have been pared down as follows:

1.    ***Stipulations for Dismissal of Certain Claims and Plaintiff's Motion to Reverse Stipulations***

Plaintiff's original suit named eight individual defendants.[12]  On

November 30, 2005, Plaintiff stipulated to a dismissal with prejudice as to all

claims against all individual defendants, leaving only claims against the County.

Plaintiff later regretted his decision and filed a motion to reverse the stipulation

for dismissal of the individually named defendants.  Plaintiff prevailed in part and

certain § 1981 and punitive damages claims against Kostrick, Takamine, and

Goode were reinstated, while the reinstatement of Plaintiff's claims as to the other

individual defendants was denied.

On March 28, 2006, Plaintiff stipulated to a dismissal of his

intentional infliction of emotional distress claim.  On February 20, 2007, Plaintiff

---

[12]  In addition to Goode, Takamine, and Kostrick, Plaintiff also named James Apana, Grant Chun, Dennis Schwind, Ron Riska, and Allen Souza.

stipulated to a dismissal of his claims for violations of the Americans with

Disabilities Act.  Plaintiff has also apparently agreed to stipulate to the dismissal

of his wage claims but has yet to sign the stipulation.  *See* Defs'. Reply in Support

of Defs'. Mot. for Partial Summ. J. Exs. E, H.

### 2.    *Defendants' Previous Motion for Partial Summary Judgment*

The Defendants previously moved for partial summary judgment,

which this court granted in part and denied in part.  *Kaulia v. County of Maui*,

2006 WL 4660130 (D. Haw. May 24, 2006).  The court found that Plaintiff's

§§ 1983, 1985, and 1986 claims were barred by the statute of limitations.  The

court also found that Plaintiff's punitive damages claim against the County was

barred.

In addressing Plaintiff's § 1981 claims, the court found that claims

relating to the conditions of Plaintiff's employment -- claims of a hostile work

environment, allegations of less desirable assignments, denial of a transfer, and

retaliation -- were made possible by the 1991 amendments to § 1981 and that the

four-year statute of limitations enacted in 1990 therefore applied.  The court also

held that Plaintiff's claim that the County gave him negative job references is

contract-based (as it relates to prospective contractual relations with other

employers) and was available prior to the 1991 amendments, and as such is subject

17

to a two-year statute of limitations.  Finally, the court found that Plaintiff's claim that the County failed to promote him may be subject to either the two-year or four-year statute of limitations depending on the type of promotion he was denied.[13]

### 3.   Defendants' Current Motions for Partial Summary Judgment and for Summary Judgment

Plaintiff's remaining claims are: (1) allegations of violations of 42 U.S.C. § 1981 against Goode, Takamine, Kostrick, and the County; (2) allegations of violations of Title VII against the County; (3) allegations of violations of HRS §§ 368 and 378 against the County; and (4) a claim for punitive damages against Goode, Takamine, and Kostrick.

Defendants have filed two separate motions.  In their Motion for Partial Summary Judgment, Defendants argue that the § 1981 and HRS §§ 368 and 378 claims for negative job references are time-barred and that the § 1981 and punitive damage claims against Goode and Takamine should be dismissed because they did not actively discriminate against the Plaintiff and are entitled to qualified immunity.  In their Motion for Summary Judgment, Defendants move as to the remaining claims against the County and against Kostrick.  Plaintiff filed a

---

[13]   Prior to the 1991 amendments, failure to promote was actionable only if the change in position involved the opportunity to enter into a new contract.  This court found that any other type of failure to promote claim would be subject to the four-year statute of limitations.

Memorandum in Opposition to the Defendants' Motion for Summary Judgment,[14]

to which Defendants replied.  The court heard arguments on May 29, 2007.

## III.  STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. Pro. 56(c).  The burden initially lies with the moving party to show that

there is no genuine issue of material fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec.*

---

[14]  Defendants move the court to strike Plaintiff's Memorandum in Opposition or to grant Defendants "attorney's fees for the time spent in wading through irrelevant arguments."  Defs'. Reply to Mem. in Opp'n 13.  The request is not without merit.  Although counsel for the County twice reminded Plaintiff's counsel, Andre S. Wooten, of the filing deadline, and even though this court issued a Minute Order reiterating the deadline, Mr. Wooten filed the Plaintiff's Memorandum in Opposition a day late.  Mr. Wooten also failed to include a Table of Authorities, as required by Local Rule 7.5(f); ignored 28 U.S.C. § 1746(2) which requires the language "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct" and instead included in Plaintiff's Declaration a statement that its contents are accurate "to the best of my ability"; violated Local Rule 56.1(d) by filing a Counter Statement of Facts which is over-length but fails to provide a certificate of compliance; violated Local Rule 56.1(b) which requires a clear statement of the facts a party accepts or rejects and instead responds, "Maybe" and "So what?"; improperly cited to unpublished opinions; and attempted to authenticate documents through a Declaration of Counsel even though Mr. Wooten himself did not prepare or directly receive the underlying documents.  Finally, Plaintiff's Memorandum in Opposition references claims not implicated by this case; references phantom plaintiffs; continues to argue claims that he agreed to dismiss or that this court previously dismissed; and cut and pastes material from the Complaint, previous pleadings in this case, and, apparently, pleadings in other cases.  *See, e.g.*, Mem. in Opp'n 27 ("In this case, defendants intentionally breached their obligation under Federal and State Law to administer the Federal Education and School Athletic funds, enrollments and job hiring fairly and without gender or racial discrimination, by intentionally or wantonly excluding female Filipino-American physical education teachers and coaches from employment in the public school Athletic Director position in the state on a discriminatory basis[.]").

Despite the numerous defects in Plaintiff's current pleadings, the court DENIES the Defendants' motion to strike and request for attorneys' fees.

*Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'"  *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex*, 477 U.S. at 323-24.  "There is no genuine issue of fact if the party opposing the motion 'fails to make an adequate showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden at proof at trial.'" *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)

(*quoting Celotex*, 477 U.S. at 322).  Moreover, there is no genuine issue of

material fact if, taking the record as a whole, a rational trier of fact could not find

in favor of the non-moving party.  *Matsushita*, 475 U.S. at 586; *Taylor*, 880 F.2d

at 1045.

## IV.  ANALYSIS

**A.      Defendants Are Entitled to Summary Judgment as to Plaintiff's § 1981 Claims**

Section 1981 provides, in pertinent part, that "all persons within the

jurisdiction of the United States shall have the same right . . . to make and enforce

contracts . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a); *see also*

*Patterson v. County of Oneida, N.Y.*, 375 F.3d 206 (2d Cir. 2004) (Section 1981

"outlaws discrimination with respect to the enjoyment of benefits, privileges,

terms, and conditions of a contractual relationship, such as employment.").  "[T]he

term 'make and enforce contracts' includes the making, performance,

modification, and termination of contracts, and the enjoyment of all benefits,

privileges, terms, and conditions of the contractual relationship."  42 U.S.C.

§ 1981(b).

The court finds that the Defendants are entitled to summary judgment

as to Plaintiff's § 1981 claims.  First, Goode and Takamine are entitled to

summary judgment because they did not participate in, and were not aware of, the

alleged wrongdoing.  Second, certain § 1981 claims are time-barred.  Third,

Defendants demonstrate that there is no genuine issue of material fact as to

Plaintiff's remaining § 1981 claims and that the County and Kostrick are entitled

to summary judgment as a matter of law.  Finally, Defendants have demonstrated,

and Plaintiff has not rebutted, that the County did not employ a policy or custom

of racial discrimination.[15]

### 1.    *Plaintiff Has Failed to Demonstrate that Goode and Takamine Personally Participated in the Alleged Wrongdoing*

To be held individually liable under § 1981, an individual must

personally participate in the discriminatory acts or be informed of the wrongdoing

of his or her subordinates but be grossly negligent or deliberately indifferent as to

their supervision.  *County of Oneida, N. Y.*, 375 F.3d at 229 ("Personal

---

[15] Defendants have also argued that because Plaintiffs' public employment does not create contractual expectancies under state law, § 1981 does not apply.  *See Judie v. Hamilton*, 872 F.2d 919, 923 (9th Cir. 1989).  Whether Hawaii public or civil service employees have contractual expectancies under Hawaii state law is an open question.  Although there is some support for the proposition that public or civil service employees have "statutory" rather than "contractual" expectancies under Hawaii law, the law is far from settled.  *See* HRS §§ 76-11 (defining civil service, civil service employee, and public employee), 76-77 (applying the civil service provisions to positions in the public service of the County with certain exceptions); *De Silva v. Brown*, 38 Haw. 166, 167 (1948) ("The relation which exists between a public official and the corporation is one created by law and not partaking in the least of the nature of a contract.").  However, because the parties did not fully brief this issue and because ruling on this question is not necessary for the disposition of the case given the court's findings below, the court declines at this time to rule whether § 1981 claims may be brought by Hawaii public or civil service employees.

involvement . . . includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring."); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) ("[I]n order to make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action.") (quotation marks and citations omitted); *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985) (noting that no personal liability can be imposed on a corporate official "when that official is not alleged to have participated in the actual discrimination against the plaintiff"). Mere negligence in supervision alone is not sufficient. *Whidbee*, 223 F.3d at 75.

There is no evidence in the record indicating that Goode and Takamine were involved in any of the alleged incidents of which Plaintiff complains. Nor is there any evidence that Goode or Takamine were aware of the alleged discrimination or were grossly negligent in their supervision of Kostrick or other Lahaina Plant workers.[16]

---

[16] Plaintiff makes conclusory statements that he had informed various individuals, including Goode and Takamine, of alleged civil rights violations. Plaintiff does not include any specifics as to when and where such conversations took place. These conclusory allegations --

(continued...)

### a.     *Section 1981 claims against Goode*

During his sworn deposition, Plaintiff admitted that Goode never called him names, referred to his race, or threatened him; instead, Plaintiff asserted that he named Goode individually merely because Goode was a supervisor and part of the County.  Kaulia Dep. Tr. 229-30.  There is also no evidence that Goode was ever put on notice of Kostrick's supposed racist comments or the "Haole Staff Car" golf cart sticker.  Nor is there any evidence that Goode was aware that Plaintiff had filed complaints regarding workplace conditions.  *See, e.g.*, Kostrick Dep. Tr. 47 (testifying that he never informed Goode of Plaintiff's complaints). Instead, Goode attempted to correct problems of which he was aware.  He tried to find Plaintiff an alternate position when Plaintiff requested a transfer and tried to address Plaintiff's complaints regarding his paycheck processing even though Goode had no authority to supervise or direct the Finance Department.  Kaulia Dep. Tr. 228-29.

Plaintiff has failed to rebut this evidence and has failed to point to any evidence that Goode in any way personally participated in the discriminatory acts Plaintiff complains of or that Goode was made aware of Kostrick's behavior

---

[16](...continued)
contradicted by all other evidence on the record -- are not sufficient to withstand summary judgment.  In any event, Plaintiff presents no evidence to suggest that the supervisors were grossly negligent or deliberately indifferent in the supervision of others.

24

but was grossly negligent to his supervision.  Goode is entitled to summary

judgment as to Plaintiff's § 1981 claims.

> b.   *Section 1981 claims against Takamine*

Takamine started work with the County near the end of Plaintiff's

employment.[17]  Kaulia Dep. Tr. 230-31.  Takamine states that he never called

Plaintiff derogatory names and never based his supervisory decisions on Plaintiff's

race, color, grievances, worker's compensation claims, or other complaints.  Defs'

Mot. for Partial Summ. J., Takamine Decl. ¶ 5.  Plaintiff agreed, admitting during

his deposition that Takamine "didn't do anything specifically" to Plaintiff and

didn't call Plaintiff names.  Kaulia Dep. Tr. 232-33.  Plaintiff further admitted that

his only contact with Takamine was a couple of conversations regarding the delay

in some of Plaintiff's checks and that Takamine gave a seminar on preventing

discrimination which Kaulia attended.  Kaulia Dep. Tr. 231-32.   Finally, Kaulia

admitted that he named Takamine not because he had individually done anything

wrong, but because he "named all the bosses, because nothing was done.  Nothing

was resolved."  Kaulia Dep. Tr. 233.

Nor is there any evidence that Takamine was grossly indifferent to the

alleged wrongdoing; indeed, Plaintiff admitted that Takamine scolded him for not

---

[17]  Takamine was acting Chief from September 1, 2001 to February 5, 2002.  He assumed the Chief position on February 6, 2002.

bringing his concerns to management's attention in a timely manner.  As such,

Takamine is entitled to summary judgment as to Plaintiff's § 1981 claims.

> **2.**      ***The County and Kostrick Are Entitled to Summary Judgment as to Plaintiff's § 1981 Claim for Failure to Promote***

Plaintiff claims he applied for a promotion sometime in 2000 or 2001.

The position was filled by a worker with more seniority than Plaintiff.  *See* Kaulia

Dep. Tr. 200.  Plaintiff conceded during his deposition that he did not have a claim

for discrimination based on the promotion of a more senior employee over him.

*Id.*  The court therefore grants the County and Kostrick summary judgment as to

Plaintiff's § 1981 failure to promote claim.

> **3.**      ***The County and Kostrick Are Entitled to Summary Judgment as to Plaintiff's § 1981 Claim for Alleged Negative Job References***

Plaintiff's § 1981 claim for alleged negative job references is time-

barred.  In its May 24, 2006 Order, this court found that because Plaintiff's claim

of negative employment references was a cause of action available prior to the

1991 amendments to § 1981, it is subject to a two-year statute of limitations.

Plaintiff filed his Complaint on April 22, 2005.  Under the applicable

two-year statute of limitations, Plaintiff may not recover for any negative

employment references allegedly occurring prior to April 22, 2003.  Plaintiff

admitted during his deposition that the two negative job references he complains

of occurred shortly after his resignation in April 2002 -- almost one year outside of

the applicable statute of limitations.[18]  *See* Kaulia Dep. Tr. 42-43, 54-55.

Plaintiff's § 1981 claims for alleged negative job recommendations are dismissed.

### 4.     *There Was No Policy or Custom of Discrimination*

When a plaintiff brings a § 1981 claim against a municipality or a

municipal employee acting in his or her official capacity, the plaintiff must show

that the challenged acts were performed pursuant to a municipal policy or custom;

liability cannot be inferred based on a theory of *respondeat superior* alone.  *See*

*Fed'n of African Am. Contrs. v. City of Oakland*, 96 F.3d 1204, 1215 (9th Cir.

1996) (concluding that Congress intended to import the "policy or custom"

_____

[18]  Plaintiff claims in his Declaration that he lost his post-County employment with
MacDonald Construction due to negative job references from the County.  However, Plaintiff
testified in his sworn deposition that he left the job at MacDonald because he did not have job
security there and that the only two negative job references he alleges involved Sun Industries
and Hawaiian Foliage, both of which occurred in March or April of 2002.  *See* Kaulia Dep. Tr.
42-43, 45-48, 54-55.  "The general rule in the Ninth Circuit is that a party cannot create an issue
of fact by an affidavit contradicting his prior deposition testimony."  *Kennedy v. Allied Mut. Ins.
Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  Before applying this sanction "the district court must
make a factual determination that the contradiction was actually a 'sham.'"  *Id.* at 267.  Here,
Plaintiff's deposition testimony was detailed and clear -- he was hired by MacDonald on a
temporary basis and was paid by commission.  Because he was unable to obtain commissions, he
left the job within one month, and the sole reason he left the job was a lack of security.  Kaulia
Dep. Tr. 46-48.  His declaration, at best, is conclusory and without detail.  The court finds that
Plaintiff's self-serving statements contained in his declaration are a sham and do not defeat his
sworn deposition testimony.
    Plaintiff's Memorandum in Opposition also states that the County provided negative job
references in July 2003 when Plaintiff was hired for a job by his current employer on the Big
Island.  However, Plaintiff offers no *evidence* to support this statement; it is not included in
Plaintiff's declaration; and Plaintiff did not mention it during his deposition, saying instead that
"only those two" (referring to Sun Industries and Hawaiian Foliage) were given negative
references.  Kaulia Dep. Tr. 55.

language into § 1981); *Monnell v. Dep't of Soc. Servs. of New York City*, 436 U.S. 658, 690-94 (1978).  The Ninth Circuit has held that a plaintiff may establish municipal liability in one of three ways:

> (1) prov[ing] that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;
>
> (2) establish[ing] that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official government policy; or
>
> (3) prov[ing] that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

*Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (internal quotations and citations omitted).

Defendants presented evidence that the County prohibited employment discrimination.  Defs'. Mot. For Summ. J. Ex. C.  Plaintiff has offered no evidence to rebut this claim or to otherwise show the existence of a policy or practice.  Defendants are entitled to summary judgment as a matter of law as to all of Plaintiff's § 1981 claims.

**B.      The County Is Entitled to Summary Judgment as to Plaintiff's Title VII Claims**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race" or "to limit, segregate, or classify . . . employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of such individual's race . . . ." 42 U.S.C. §§ 2000e-1(a)(1), 2000e-2(a).  Additionally, "Title VII's anti-retaliation provision forbids employer actions that discriminate against an employee . . . because he has opposed a practice that Title VII forbids or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing."  *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2410 (2006) (citations omitted); 42 U.S.C. § 2000e-3(a).  The court finds that the County is entitled to summary judgment as to Plaintiff's Title VII discrimination and retaliation claims.

**1.      *Certain Allegations Do Not Rise to the Level of Title VII Claims***

Kostrick's alleged racial comments and the presence of a golf cart with a "Haole Staff Car" sticker, although offensive, are not by themselves independent causes of action under Title VII.  They are not events or occurrences which affect the compensation, terms, conditions, or privileges of Plaintiff's

employment (nor has the Plaintiff linked them to such events).  Nor are they by themselves, and without anything more, acts of retaliation.  As such, these incidents do not constitute independent Title VII claims.  To the extent Plaintiff wished to raise them as such, the Defendants are entitled to summary judgment.  These incidents are relevant, and will be considered, as evidence of discriminatory or retaliatory intent, pretext, and as part of Plaintiff's hostile work environment claim discussed *infra*.

**2.      *Plaintiff's Title VII Claims for Discrete Acts Are Barred Due to Plaintiff's Failure to Timely File an EEOC Complaint***

Plaintiff must exhaust his administrative remedies by timely filing a claim with the EEOC prior to filing suit in federal court.  42 U.S.C. § 2000e-5(b); *Vasquez v. County of L.A.*, 349 F.3d 634, 644 (9th Cir. 2003); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002); *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990).  Federal subject matter jurisdiction will extend "to all claims of discrimination that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge."  *Vasquez*, 349 F.3d at 644; *B.K.B.*, 276 F.3d at 1099; *EEOC v. Farmer*, 31 F.3d 891, 899 (9th Cir. 1994).  The court construes Plaintiff's EEOC Complaint "with the utmost liberality."  *Kaplan v. Int'l Alliance of Theatrical & Stage Employees*, 525 F.2d 1354, 1359 (9th Cir. 1975).

30

The parties dispute whether a 180-day or 300-day statute of limitations period applies to the filing of Plaintiff's EEOC Complaint.  In brief, the 180-day period applies unless a plaintiff "initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice."  42 U.S.C. § 2000e-5(e)(1).  Hawaii has its own enforcement agency, the Hawaii Civil Rights Commission ("HCRC").[19]

Defendants argue that because Plaintiff filed a complaint with the EEOC and the HCRC simultaneously -- instead of filing first with the HCRC and subsequently filing a separate complaint with the EEOC -- the 180-day period applies.  The court disagrees.

"Discrimination claims under Title VII ordinarily must be filed with the EEOC within 180 days of the date on which the alleged discriminatory practice occurred.  However, if the claimant first 'institutes proceedings' with a state agency that enforces its own discrimination laws -- a so-called 'deferral' state -- then the period for filing claims with the EEOC is extended to 300 days."  *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir. 1999) (citations omitted).  Similarly, where "a charge is sent first to the EEOC instead of the appropriate state

---

[19]  The HCRC has a 180-day statute of limitations provision for state law claims.  *See* HRS §§ 368-11(c), 368-12; *Ross v. Stouffer Hotel Co.*, 76 Haw. 454, 460, 879 P.2d 1037, 1043 (1994).

deferral agency, and the state prohibits the alleged employment practice, the EEOC will refer the claim to the state agency.  The EEOC works out arrangements with each state deferral agency regarding such deferrals." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998).

Hawaii is a deferral state.[20]  *See* 29 C.F.R. §§ 1601.80, 1601.13; *Beaulieu v. Northrop Grumman Corp.*, 161 F. Supp. 2d 1135, 1141 (D. Haw. 2000).  Thus, because the EEOC defers jurisdiction to the HCRC, the 300-day period applies "regardless of whether the complaint was first received by the EEOC or the state." *Bouman v. Block*, 940 F.2d 1211, 1220 (9th Cir. 1991).  The 300-day statute of limitations applies.

Plaintiff filed his EEOC Complaint on December 6, 2001, amending it on December 14, 2001.[21]  Under the 300-day statute of limitations, discrete acts

---

[20]  In deferral states, "no charge may be filed [with the EEOC] . . . by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated. . . ." 42 U.S.C. § 2000e-5(c).

As a deferral state, Hawaii may also form worksharing agreements with the EEOC, under which filing a complaint with one agency constitutes a simultaneous filing with the other.  *See Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1263 (11th Cir. 2001).  Although the EEOC-HCRC worksharing agreement is not on the record, counsel for both Plaintiff and the Defendants agreed at oral argument that when filing a complaint with either the EEOC or the HCRC, a complainant may file a single form and check a box indicating that he or she wishes to file with both agencies.  Plaintiff so indicated in this case.

[21]  In his Memorandum in Opposition to the Defendants' Motion for Summary Judgment, Plaintiff confusingly includes a "Counter-Statement of Facts" in which he writes, "Plaintiff filed his Maui County Discrimination Grievance in April 2001 and a subsequent EEOC complaint of

(continued...)

which occurred prior to February 9, 2001, are time-barred.  Defendants have

asserted the statute of limitations as a defense to many of Plaintiff's claims.

Several claims clearly fall outside of the relevant limitations period.  As to other

claims, Plaintiff either fails entirely to allege any date at all or submits that an event

occurred sometime in "2001" but fails to assert a specific date within the

limitations period.  Where a defendant raises a statute of limitations defense, a

plaintiff's conclusory allegations that his claims are timely, unsupported by facts

showing that the incidents occurred within the relevant limitations period, are

insufficient to survive a motion for summary judgment.  *Hernandez v. Spacelabs*

*Med., Inc.*, 343 F.3d 1107, 1116 (9th Cir. 2003) ("Hernandez asserts that several of

---

[21](...continued)
racial and ADA discrimination on the job with the Maui County Waste Water Treatment plant in Lahaina in or about November 3, 2001.  Ex. 2, 27, & 25."  Plaintiff appears to be mistaken.

Plaintiff's Exhibit 2 is an apparently redacted version of an undated County of Maui Discrimination Complaint Form.  The complete copy of the form is included as Defendants' Exhibit D to Defendants' Motion for Summary Judgment.  Plaintiff used the form to file complaints of workplace violence, stress and fatigue, that he was not interviewed, and that he was denied an opportunity to be transferred.  When completing the section regarding the cause of the alleged discrimination, Plaintiff did not check the categories of race, ancestry, or color.  Instead, Plaintiff included his own categories, including "neglect," "EO," and "manpower."  *See* Defs'. Mot. for Summ. J. Ex. D.  This is not an EEOC or HCRC Complaint for the purposes of 42 U.S.C. § 2000e-5(e)(1).

Plaintiff's Exhibit 27 is a May 17, 2001 Union Grievance Form filed by a Union representative on behalf of "All Unit 1 Employees."  The Grievance complains of the manpower shortage; the subsequent stress and fatigue being placed on the employees; and a lack of training.  This is not an EEOC or HCRC Complaint for the purposes of 42 U.S.C. § 2000e-5(e)(1).

Finally, Plaintiff's Exhibit 25 is Mr. Wooten's Declaration in the EEOC filing.  Mr. Wooten's signature is dated December 5, 2001.  Plaintiff's signature is dated December 12, 2001.  Mr. Wooten failed to attach the actual EEOC Complaint, but the Defendants did at Exhibits A and B to the Defendants' Motion for Summary Judgment.  The file date of the EEOC Complaint is December 6, 2001.

these incidents occurred in 'late 1998' or 1999.  However, he offers no support for

these asserted dates other than his declaration.  Indeed, he offers no specific dates

for any of the actions.  Hernandez's conclusory allegations, unsupported by facts,

are insufficient to survive a motion for summary judgment."); *Taylor v. List*, 880

F.2d 1040, 1045 (9th Cir. 1989) ("There is no genuine issue of fact if the party

opposing the motion 'fails to make an adequate showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial.'" (*quoting Celotex*, 477 U.S. at 322)).  The

following claims are thus barred:

   a.    *Denial of training*

        Plaintiff claims that he was wrongfully denied a training opportunity,

but fails to specify when this incident supposedly took place.  Indeed, the record

indicates that Plaintiff did attend training, even receiving a certificate; that training

was offered through a correspondence class that Plaintiff could have completed at

any time; and that Plaintiff himself turned down opportunities for on-site training.

Kostrick Dep. Tr. 27-28, 47; Defs'. Mot. for Partial Summ. J. Ex. XX; Defs'. Mot.

for Summ. J. Ex. G.  Given that there is no evidence that Plaintiff ever requested

and was denied training within the limitations period, summary judgment is

appropriate.

### b.    Threats of violence against others

Plaintiff alleges that Kostrick's threats of violence against a Caucasian and an African-American employee somehow constituted illegal discrimination against Plaintiff.  The first threat occurred in October, 2000 and the second sometime prior to March, 2001.  The first instance is outside of the 300-day limitations period.  The second instance may or may not be within the limitations period, but Plaintiff has failed to introduce any evidence as to when specifically the incident he complains of took place or when he learned of it and felt personally threatened.  As such, the County is entitled to summary judgment.

### c.    Failure to promote

Plaintiff claims that he applied for a single promotion, in 2000 or 2001.  He has failed to present any evidence as to a specific date, entitling the County to summary judgment.[22]

### d.    Failure to provide Plaintiff with work boots

Plaintiff admitted during his deposition that he complained of a failure to receive work boots sometime in early 2001.  *See* Kaulia Dep. Tr. 136.  Plaintiff has not set forth any evidence as to whether this occurred before or after February

---

[22]  In any event, Plaintiff has conceded that the County's failure to promote him did not violate Title VII.  In his deposition, Plaintiff admitted that he had only applied for one promotion which was given to an employee with work seniority.  Kaulia Dep. Tr. 220.  Plaintiff thus conceded that he did not have any claims of discrimination relating to that specific incident. Kaulia Dep. Tr. 221.

9, 2001.  As such, the County is entitled to summary judgment.

          *e.     Failure to provide Plaintiff with an I.D. badge*

       Plaintiff complains that he was not given a photo I.D. badge when he

began work in 1998.  This claim is outside of the applicable statute of limitations.

          *f.     Remaining Title VII claims*

       Plaintiff's remaining claims -- those that were timely filed with the

EEOC and within the scope of the EEOC Complaint -- include the failure to

include Plaintiff on an interview list; placing Plaintiff on administrative leave in

late June, 2001; denial of his transfer requests in April and December, 2001 and

January, 2002; alleged delay in processing Plaintiff's paychecks; withholding pay

due to improper overpayment; and a parking ticket on Plaintiff's brother-in-law's

rental car.  The court now turns to consider these claims.

       **3.     The County Is Entitled to Summary Judgment as to Plaintiff's Title
             VII Discrimination Claims**

       A person suffers discrimination prohibited by Title VII "when he or

she is singled out and treated less favorably than others similarly situated on

account of race." *Jauregui v. City of Glendale*, 852 F.2d 1128, 1134 (9th Cir.

1988).  Plaintiff, a Hawaiian male, claims that he was treated less favorably than

Caucasian individuals.[23]  The court applies the familiar *McDonnell Douglas* burden shifting scheme to Plaintiff's remaining Title VII claims.[24]

To survive a motion for summary judgment, Plaintiff must proffer admissible evidence as to each element of his Title VII claim.  *See Texas Dep't of Com. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *Sengupta v. Morrison-Knudsen Co., Inc.*, 804 F.2d 1072, 1074 (9th Cir. 1986).  Plaintiff must show that

---

[23]  Plaintiff's Title VII claim does not focus on the treatment of Hawaiians vis-a-vis all other ethnic groups, but on the treatment of non-Caucasians vis-a-vis Caucasians.  *See, e.g.*, Compl. ¶¶ 16-20 (alleging that Plaintiff was assigned "extra dirty work not assigned to white employees," that Kostrick "stated that he disliked all non-whites"; that Kostrick "explicitly stated that non-whites should perform dirtier manual labor, and that whites should have managerial powers"; and that Kostrick assigned non-Caucasians manual labor and Caucasians lighter work); Defs' Mot. for Summ. J. Ex. EE ("At work, we have discriminatory personalities between the locals and haole's [sic] (white guys) . . . .").

[24]  Even if Plaintiff's barred claims had been within the limitations period, the court would nonetheless have granted the County summary judgment for the following reasons:

As regards the alleged denial of training, the Defendants also offer a legitimate rationale if such a denial did actually occur, namely the severe manpower shortage at the Lahaina Plant. Plaintiff has failed to offer any evidence that this stated rationale is pretext for discrimination.

The court also finds that Kostrick's threats of workplace violence against Caucasian and African-American employees does not constitute racial discrimination against Plaintiff. Although Plaintiff alleges in his Complaint that Kostrick physically threatened him, he later admitted that this was not the case.  Instead, there are at least two instances on the record where Plaintiff threatened physical violence against Kostrick.  Such facts do not give rise to a Title VII discrimination claim.

Next, with regards to the failure to receive work boots, the court notes that Plaintiff cannot sustain a race-based or retaliation claim when Plaintiff admits that the rest of his co-workers received their boots, including non-Caucasian co-workers and co-workers who had filed complaints about manpower shortages and the like.

Finally, the court also finds that Plaintiff has failed to show that the denial of a photo I.D. badge constitutes an adverse personnel action under Title VII or that the failure to provide him with a photo I.D. badge was race-based.  Indeed, when asked whether he had any evidence to show that the failure to provide an I.D. badge was based on racial animus, Plaintiff replied, "No, I don't. No evidence at all."  Kaulia Dep. Tr. 140.

(1) he belongs to a protected class; (2) he was qualified for the position and was performing his job in a satisfactory manner; (3) he suffered an adverse personnel action at the hands of the defendant employer; and (4) the County treated similarly situated Caucasian individuals more favorably than non-Caucasians. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659 (9th Cir. 2002).  "A plaintiff's failure to offer evidence establishing a necessary element of his prima facie case will ordinarily be fatal to his claim."  *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002).

Even under the low burden of proof required at the prima facie stage, Plaintiff has failed to set forth admissible relevant evidence as to the last two elements for many of his claims.  As to Plaintiff's other claims, the County sets forth a legitimate non-discriminatory reason for its actions but Plaintiff fails to demonstrate that the County's rationale is pretext.  The County is thus entitled to summary judgment as to Plaintiff's Title VII discrimination claims as follows:

a.    *Failure to include Plaintiff on an interview list*

The omission of Plaintiff from an interview list occurred on April 17, 2001.  Plaintiff has failed to show that an accidental omission of his name from an

38

interview list constitutes an adverse personnel action.[25]   Further, because some

Caucasians were also mistakenly left off the interview list and because other

employees of Hawaiian ancestry and other employees who complained of

manpower shortages were included on the interview list, Plaintiff was not treated

differently than other similarly situated Caucasian employees.  Finally, the County

has offered a legitimate, non-discriminatory explanation for its actions: human

error.  Plaintiff has not proffered evidence to show that Kostrick was involved in

creating the interview list.  Nor has Plaintiff introduced any other evidence to show

that the County's mistaken oversight was pretext for a discriminatory motive.  The

County is entitled to summary judgment.

       b.    *Denial of transfer requests in April and December, 2001 and January, 2002*

Plaintiff claims that the County's refusal to allow him to transfer

constitutes discrimination.  However, Plaintiff has failed to set forth a prima facie

claim of discrimination because he has not demonstrated that he was treated

differently than similarly situated individuals.  *See Chuang v. Univ. of Cal. Davis*,

225 F.3d 1115, 1124 n.8 (9th Cir. 2000) (Plaintiff must show "that an employer

treated similarly situated individuals outside the plaintiff's protected class more

favorably . . . ." (emphasis omitted)).  Other non-Caucasian employees, including

---

[25]  In fact, Plaintiff was interviewed approximately one week later.

an African-American and a Hawaiian, were granted transfer requests.  *See* Defs'.

Mot. for Summ. J., Marsh Decl. ¶¶ 8-9; Kaulia Dep. Tr. 68, 147-48.

Additionally, the County has offered legitimate, non-discriminatory

reasons for its decision to decline Plaintiff's transfer requests.[26]  Plaintiff has not

introduced any evidence to show that the County's stated reasons -- that his transfer

was denied because Plaintiff was not involved in the allegations of workplace

violence; Plaintiff indicated that he was not fearful of Kostrick; the manpower

shortage would worsen were he to transfer; and the County did not have any other

available positions at his skill level in other plants -- were pretext for racial

discrimination.[27]  Defs'. Mot. for Summ. J. Ex. H, Marsh Decl. ¶ 26.

---

[26]  The record further indicates that both Takamine and Goode attempted to find Plaintiff a position at another plant and, when failing to do so, offered to help find Plaintiff a position outside of the Wastewater Division.

[27]  Kostrick's supposed use of the term "dumb Hawaiian" in the Plaintiff's presence and the use of a golf cart that had a faded "Haole Staff Car" sticker on it is insufficient to show pretext on the part of the County.  It is certainly true that racial remarks can be direct evidence of racial animus.  *See Coghlan v. Am. Seafood Co.*, 413 F.3d 1090, 1096 n.8 (9th Cir. 2005) (describing direct evidence as that which "proves the fact of discriminatory animus without the need for substantial inference."); *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1128-29 (9th Cir. 2000) (finding direct evidence of discriminatory animus where reference was made to the plaintiff being a "Chink" and the plaintiff was told to "pray to [his] Buddha for help"); *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1149 (9th Cir. 1997) (finding direct evidence of discriminatory motive where plaintiff was referred to as a "dumb Mexican").  While such incidents would be enough to show pretext on the part of Kostrick, Kostrick testified that he did not have authority over transfers.  *See* Kostrick Dep. Tr. 100.  Instead, it was Goode and Takamine who denied Plaintiff's transfer requests.  Plaintiff has not introduced any evidence to show that Goode or Takamine harbored racial animus or agreed with the sentiments underlying Kostrick's behavior.  Indeed, Plaintiff himself admitted that neither Goode nor Takamine ever used racial slurs or called Plaintiff names.

### c.   *Alleged delay in payment*

Although Plaintiff was paid in full when he was on disability leave,

Plaintiff alleges that the failure of the County to tender his wages through direct

deposit without a waiting period constituted discrimination.  The court disagrees.

The County's procedure for disability worker's compensation payments was for

checks to be prepared by hand and to be subject to a three-day waiting period.

Plaintiff has introduced no evidence showing that the implementation and

enforcement of this policy was an adverse personnel action or that Plaintiff was

treated differently from similarly situated individuals.  Plaintiff has also failed to

show that the County's standard procedures were pretext for discrimination.[28]  As

such, Plaintiff's claim must fail.

### d.   *Withholding due to improper overpayment*

Plaintiff alleges that the County's treatment of his overpayment of

worker's compensation claims was discriminatory.  Plaintiff is unclear as to

whether he is alleging that the County's initial overpayment -- stemming from the

fact that the County mistakenly paid Plaintiff both his regular wages and worker's

compensation at times when Plaintiff was on leave -- was discriminatory or that the

---

[28]   Kostrick had no involvement or authority over the processing of paychecks; as such, his statements cannot be used to show pretext on the part of employees of the County Finance Department.  Kostrick Dep. Tr. 100.

41

subsequent withholding of wages to reimburse the County[29] was discriminatory.  In

either case, Plaintiff's claim fails since by his own admission Plaintiff does not

have any evidence showing that this incident was racially-motivated.  Kaulia Dep.

Tr. 231-32.  Requiring Plaintiff to repay the County for wages incorrectly disbursed

to Plaintiff -- and which he did not rightfully earn or deserve as he himself admits

-- does not constitute discrimination.  Plaintiff has thus failed to demonstrate that

he was subjected to an adverse personnel action or treated differently than similarly

situated individuals.  Plaintiff has also failed to show that the County's stated

reason for the withholding -- that the County had mistakenly overpaid him and

needed to be reimbursed -- was pretext for a prohibited motive.[30]

      e.      *Assignment of "dirty" and manual labor*

      Plaintiff confoundingly alleges that he was assigned to do dirty and

manual labor because he was not Caucasian.  Plaintiff appears to ignore the fact

that his Position Description clearly stated that the performance of the manual labor

functions "is the reason that the job exists," and notes that the position may involve

"work  in [a] hazardous, filthy and obnoxious working environment . . . ."  Defs'.

Mot. for Partial Summ. J. Ex. C at 31.  Plaintiff cannot maintain a discrimination

---

[29]  Plaintiff, represented by his union representative, agreed to the withholding.

[30]  Kostrick had no authority over Plaintiff's paychecks.  Kostrick Dep. Tr. 101.  Thus, his racial slurs cannot be used to show pretext.

claim for being required to do his job.

**4.**     ***The County Is Entitled to Summary Judgment as to Plaintiff's Title VII Retaliation Claims***

Plaintiff also claims that the County retaliated against him in violation of Title VII.  Under Title VII, an employer may not discriminate against an employee because the employee has opposed an employment practice made unlawful by Title VII.  42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice [prohibited by Title VII] . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."); *Burlington N. & Santa Fe Ry. Co.*, 126 S.Ct. at 2410 ("Title VII's anti-retaliation provision forbids employer actions that discriminate against an employee . . . because he has opposed a practice that Title VII forbids or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing." (internal quotations and citations omitted)).

To make a prima facie showing of retaliation under Title VII, the Plaintiff must show that (1) he engaged in a protected activity; (2) the County took an adverse action against the him; and (3) there was a causal link between his involvement in the protected activity and the adverse personnel action undertaken

43

by the County.  *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004); *Vasquez*, 349 F.3d at 646. For the purposes of a Title VII retaliation claim, an adverse employment action is one that a reasonable employee would find to be materially adverse, or which would dissuade a reasonable worker from filing a discrimination charge. *Burlington N. & Santa Fe Ry. Co.*, 126 S.Ct. at 2415.  The *McDonnell Douglas* framework also applies to Title VII retaliation claims.  *See McGinest*, 360 F.3d at 1124.

Plaintiff engaged in a protected activity, namely the filing of an EEOC Complaint on December 6, 2001 (amended on December 14, 2001).[31]  *See* Defs'. Mot. for Summ. J. Exs. A, B.  However, Plaintiff has failed to make the required showing as to the last two elements for many of his Title VII retaliation claims. Where Plaintiff does so show, the County has set forward a legitimate, non-discriminatory reason for its actions, but Plaintiff has failed to set forth evidence demonstrating that the County's rationale is pretext for retaliation.  The County is

---

[31]  Plaintiff filed a County of Maui Discrimination form complaining of "stress fatigue, neglected & discriminated by management of fair/equal opportunity to transfer" regarding events that occurred in April, 2001.  *See* Defs'. Mot. for Summ. J. Ex. D.  The form includes a section asking the complainant to indicate the factors that the alleged discrimination is based upon. Instead of checking one of the preformatted categories, including race, ancestry, or color, Plaintiff wrote in his own categories, including "neglect," "EO," and "manpower."  Further, Plaintiff described the nature of the complaint as based on allegations of workplace violence between "Robert" and Kostrick, not racial discrimination.  Because this form does not complain of acts made unlawful by Title VII, it does not constitute "protected activity."

entitled to summary judgment as to the Plaintiff's Title VII retaliation claims as follows:

      a.    *Failure to include Plaintiff on an interview list*

The County's accidental omission of Plaintiff from an interview list was not retaliation because the occurrence would not dissuade an individual from future protected activity. *Burlington N. & Santa Fe Ry. Co.*, 126 S.Ct. at 2415. Also, this event occurred in April, 2001, well before Plaintiff filed his EEOC Complaint; as such, there is no causal connection.

      b.    *Placing Plaintiff on administrative leave*

Plaintiff alleges that he was placed on administrative leave in retaliation for filing a discrimination complaint against the County.[32] Being placed

---

[32] In his Declaration, Plaintiff writes:

> One day Jake Kostrick told my co-workers in the break room that he was denying my request for leave. He was waving the faxed written request for leave that I had sent to him, as my supervisor. Jake went into the break room holding the fax saying "All the B.S. Don is giving the county I don't think I should give him leave. With his discrimination complaint I can't give him leave." Calvin Rita came to me and told me that Jake was talking about my EEO case to the crew.

> . . .

> It is true that I did one time lose my cool and call Jake Kostrick a "Fucking Hoale" [sic] But only in response to Kostrick's actions violating my privacy rights by reading my confidential leave request form to my co-workers and criticizing me and disparaging my civil rights and my civil rights complaint against him, saying he would not approve my request

(continued...)

on administrative leave may constitute an adverse employment action for the purposes of a Title VII retaliation claim.  However, Plaintiff was placed on administrative leave on June 27, 2001 -- a little under six months before he filed his EEOC Complaint.  There is no causal connection between Plaintiff's protected activity and being placed on administrative leave.

>    c.    *Denial of transfer requests in December 2001 and January 2002*

Plaintiff also claims that the County's failure to transfer him constitutes unlawful retaliation.  The court disagrees.  First, Plaintiff has made out a prima facie Title VII retaliation claim: The County's refusal to transfer an employee from a violent workplace constitutes an adverse employment action as it would likely dissuade others from filing discrimination complaints.  Second, the temporal proximity to the filing of his EEOC Complaint suggests a causal connection.

However, as the court has already explained, the County has come

---

[32](...continued)
>    because I filed an EEO complaint against him which he claimed to the
>    staff was unfounded, and provoking me to tell him to stop violating my
>    right to confidentiality and non-reprisal.

Pl.'s Mem. in Opp'n, Kaulia Decl. ¶¶ 41, 53.  Plaintiff did not personally hear Kostrick making these statements.  Since Plaintiff neglected to include a Declaration of anyone who was present to hear Kostrick's statements, Plaintiff's second hand re-telling of the incident is inadmissible hearsay.

forward with legitimate, non-retaliatory reasons for denying Plaintiff's transfer requests, namely that Plaintiff said that he was not fearful of Kostrick; that there was a severe manpower shortage at the Lahaina Plant; that the manpower shortage would only worsen were Plaintiff to be transferred; and that there were no available positions at other plants at Plaintiff's skill and pay level.  The record demonstrates that it was Goode, Takamine, and Souza who were involved with Plaintiff's transfer request; nothing on the record suggests that Kostrick was involved or that he set in motion the decisions by Goode and Takamine to decline Plaintiff's transfer requests. *Poland v. Chertoff*, Nos. 05-35508 & 05-35779, Slip Op. at 8832 (9th Cir. July 20, 2007) (holding that "if a subordinate, in response to a plaintiff's protected activity, sets in motion a proceeding by an independent decision maker that leads to an adverse employment action, the subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or the decisionmaking process."). Plaintiff has failed to introduce any evidence to show that the County's reason was pretext for a retaliatory motive.  As such, Plaintiff's claim fails.

> d.    *Withholding due to improper overpayment*

Plaintiff also alleges that the County's accidental overpayment of

47

regular and worker's compensation wages and the subsequent corrective

withholding (to which Plaintiff agreed) constituted unlawful retaliation.  Plaintiff is

incorrect.  A withholding is an adverse employment action under Title VII.

However, Plaintiff fails to demonstrate a causal connection.  The time-stamp on the

spreadsheet attached to the December 28, 2001 notice of overpayment indicates

that the County Finance Department prepared the notice and the relevant

calculations on December 20, 2001, the day *before* the County received notice of

Plaintiff's EEOC Complaint.  *See* Defs'. Mot. for Summ. J. Exs. PP at 2, QQ (date

stamp indicates document received by County on December 21, 2001).  Moreover,

Plaintiff fails to demonstrate that the County's legitimate, non-retaliatory rationale

of wanting to correct its mistake and collect the mistaken overpayments was

pretextual.  Instead, during his deposition, Plaintiff admits that he had no facts to

show that this incident was retaliatory.  Kaulia Dep. Tr. 231-32.  Defendants are

entitled to summary judgment.

        e.      *Parking ticket issued to Plaintiff's brother-in-law*

        Plaintiff alleges that his brother-in-law, whose rental car was parked

on Plaintiff's property, received a parking ticket in retaliation for Plaintiff's EEOC

Complaint.  The court rejects Plaintiff's allegation as baseless and specious.  First,

a ticket on a rental car is not an adverse act against the Plaintiff.  There is no

evidence that the officer who issued the ticket was not in any way related to, or even aware of, Plaintiff's EEOC Complaint against the Lahaina Wastewater Plant. Second, the December 19, 2001 parking ticket could not have been a retaliatory act by the County for the simple reason that the parking ticket was issued two days before the County received notice of Plaintiff's EEOC Complaint.

## C.   The County and Kostrick Are Entitled to Summary Judgment as to Plaintiff's § 1981 and Title VII Hostile Work Environment Claims

To make out a claim for a hostile work environment under § 1981[33] or Title VII, Plaintiff must show (1) he was subjected to verbal or physical conduct because of his race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the Plaintiff's employment and create an abusive work environment.[34]  *See Oncale v. Sundowner Offshore*

---

[33] Since Plaintiff's § 1981 hostile work environment claims relating to the condition of his employment -- including allegations of racist statements, less desirable assignments, and denial of a transfer -- were made possible by the 1991 amendments to § 1981, they are subject to the four-year statute of limitations contained in 28 U.S.C. § 1658.  *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004).

[34] The Supreme Court recently discussed the difference between discrete acts which form the basis of a § 1981 or Title VII claim and a hostile work environment claim:

> A discrete act of discrimination is an act that in itself "constitutes a separate actionable 'unlawful employment practice' and that is temporally distinct. *Morgan*, 536 U.S. at 114.  A hostile work environment, on the other hand, typically comprises a succession of harassing acts, each of which "may not be actionable on its own."  In addition, a hostile work environment claim "cannot be said to occur on any particular day."  *Id.* at 115-16.  In other words, the actionable wrong is the environment, not the

(continued...)

*Servs., Inc.*, 523 U.S. 75, 78 (1998) (Title VII is violated "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." (Citation and quotation marks omitted)); *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1073 (9th Cir. 2005); *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002). The County may be vicariously liable "for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over [the Plaintiff]." *See Montero v. GCO Corp.*, 192 F.3d 856, 861 (9th Cir. 1999). However, so long as the County did not take a tangible employment action against Plaintiff, the County may assert the affirmative defense that it exercised reasonable care to prevent and correct any discriminatory behavior and that the Plaintiff unreasonably failed to take advantage of available

---

[34](...continued)
       individual acts that, taken together, create the environment.

*Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S.Ct. 2612, 2175 (2007). Where a plaintiff alleges "a series of discrete discriminatory acts," each of which was "independently identifiable and actionable," the plaintiff must timely file an EEOC charge with respect to each discrete violation. *Id.* at 2175-76. Where a plaintiff alleges "a single wrong consisting of a succession of acts," at least some of the discriminatorily-motivated acts predicate to the claim must have occurred within the 180-day (or 300-day) limitation period. *Id.* at 2175 n.7; *Cherosky v. Henderson*, 330 F.3d 1243, 1246 (9th Cir. 2003) ("*Morgan* makes clear that claims based on discrete acts are only timely where such acts occurred within the limitations period, and that claims based on a hostile environment are only timely where at least one act occurred during the limitations period."). However, "[i]f the flames of an allegedly hostile environment are to rise to the level of an actionable claim, they must do so based on the fuel of timely non-discrete acts." *Porter v. Cal. Dep't. of Corrections*, 419 F.3d 885, 893 (9th Cir. 2005). Discrete acts may be considered for purposes of placing non-discrete acts in context. *Id.* at n.4.

preventative or corrective opportunities.  *Burlington Indus., Inc. v. Ellerth*, 524

U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08

(1998).  The court finds that Plaintiff's working conditions did not constitute a

hostile work environment and that the Defendants have successfully asserted an

affirmative defense under *Ellerth/Faragher*.

### 1.  *The Conditions at the Lahaina Plant Did Not Constitute a Hostile Work Environment as a Matter of Law*

In order to constitute a hostile work environment, "[t]he working

environment must both subjectively and objectively be perceived as abusive."

*Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (quotation marks

and citation omitted).  When ascertaining whether an environment is abusive,

courts consider the totality of the circumstances, including "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance."  *Nichols v. Azteca Rest. Enters., Inc.*, 256

F.3d 864, 872 (9th Cir. 2001) (*citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23

(1993)).  Thus, as the Supreme Court has noted, "'[s]imple teasing,' offhand

comments, and isolated incidents (unless extremely serious) will not amount to

discriminatory changes in the 'terms and conditions of employment.'" *Faragher*,

524 U.S. at 788 (discussing Title VII) (internal citations omitted).

At the outset, the court notes that the Lahaina Plant workplace was disorganized, volatile, stressful, and sometimes violent.  These conditions were imposed upon workers equally, regardless of their race, ethnicity, or whether they had previously filed complaints.  It is against this chaotic backdrop that the court must consider Plaintiff's claims.

Viewing the evidence in the light most favorable to Plaintiff and accepting his allegations as true, the court concludes that many of the "hostile conditions" Plaintiff complains of were not the result of race-based animus but instead were directed at all individuals equally.  Other elements of Plaintiff's claims -- that Kostrick expected Plaintiff to do his job as set forth in his position description, including messy manual labor -- hardly constitute a hostile work environment.

The court thus focuses on Plaintiff's most serious race-based complaints, namely that he was twice referred to as a "dumb Hawaiian" and that there was a golf cart with the sticker "Haole Staff Car" on the premises.  Without question, Kostrick's behavior was offensive and inappropriate.  Under the law, however, his behavior did not so infect the workplace that it altered the conditions of his employment.  Kostrick's use of epithets was isolated.  It was the general dysfunctional nature of the jobsite -- which impacted employees of all races -- and

52

not racial slights, which polluted the workplace.  Under Ninth Circuit case law,

Kostrick's offensive race-based conduct did not create a hostile work environment.

*Compare Manatt v. Bank of Am.*, 339 F.3d. 792, 798 (2003) (finding that jokes

using the phrase "China man," ridiculing for mispronunciation of names, and

employees pulling their eyes back with their fingers to mock the appearance of

Asians did not constitute a hostile work environment for a Chinese woman); *and*

*Vasquez*, 349 F.3d at 643 (finding no hostile work environment where employee

was yelled at in front of others and told he had a "typical Hispanic macho attitude"

and should work in the field because "Hispanics do good in the field"); *and Kortan*

*v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000) (finding no hostile work

environment where supervisor referred to a woman superintendent as a "castrating

bitch," "madonna," or "regina" and called the plaintiff "Medea"); *and Sanchez v.*

*City of Santa Ana*, 936 F.2d 1027, 1031-36 (no hostile work environment where

employer posted racially offensive cartoon, made racist slurs, targeted Latinos

when enforcing rules, failed to provide adequate police backup to Latino officers,

and gave Latino officers unsafe cars) *with Kang*, 296 F.3d at 817 (finding

harassment where employer verbally and physically abused plaintiff because of his

race, including informing Plaintiff on "numerous occasions" that he had to work

harder because he was Korean and that Koreans did not work as hard as others);

*and Nichols*, 256 F.3d at 872-73 (finding a hostile work environment where employee was called "faggot" and "fucking female whore" by co-workers and supervisors at least once a week and often several times a day); *and Draper v. Coeur Rochester*, 147 F.3d 1104, 1109 (9th Cir. 1998) (finding hostile work environment where supervisor made repeated sexual remarks to plaintiff employee, told her his sexual fantasies and that he wanted to have sex with her, commented on her physical characteristics, and asked over a loudspeaker if she needed help changing her clothes).  Plaintiff's hostile work environment claim fails.

### 2. *The County Has Established an Affirmative Defense to Vicarious Liability for the Conditions at the Lahaina Plant*

Since Kostrick was Plaintiff's supervisor, and since Plaintiff asserts vicarious liability against the County for the allegedly hostile work environment conditions, the *Ellerth/Faragher* affirmative defense applies.  Under the *Ellerth/Faragher* affirmative defense, the County may avoid liability for a hostile work environment if it shows that (1) it did not take a tangible employment action against Plaintiff; (2) it exercised reasonable care to prevent and correct discrimination; and (3) Plaintiff failed to take advantage of any preventative or corrective internal opportunities, including a complaint procedure.  *Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1184 (9th Cir. 2005).  The court finds that the County has made the requisite showing and is entitled to summary judgment.

   a.  *The County did not take a tangible employment action against Plaintiff*

   A "tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761.  Such an act "requires an official act of the enterprise," and "in most cases inflicts direct economic harm." *Id.* at 762; *see also Hardage*, 427 F.3d at 1184 (finding that constructive discharge constitutes a tangible employment action).

   The County has shown that it did not take any tangible employment action against Plaintiff.  First, although Plaintiff complains of the conditions at the Lahaina Plant in his resignation letter, Plaintiff does not specifically allege a constructive discharge claim.[35]  Second, placing Plaintiff on paid administrative leave (1) did not lead to direct economic harm or result in a change of position or responsibilities and (2) was a necessary and measured action given that Plaintiff had physically threatened others.

   b.  *The County exercised reasonable care to correct and prevent discrimination*

   In order to assert the *Ellerth/Faragher* defense, the County must have

---

[35]  Plaintiff's last day actually working at the Lahaina Plant was February 15, 2002. Plaintiff did not resign until April 19, 2002.

"exercised reasonable care to prevent and correct promptly any [discriminatory] behavior." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807; *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1180-81 (9th Cir. 2001) (requiring both preventative and remedial measures).  The court finds that the County exercised due care in implementing various measures to prevent and correct discrimination: The County has an anti-harassment and anti-discrimination policy; County officials gave at least one seminar on preventing discrimination; the County implemented an internal procedure through which employees could file complaints;[36] the golf cart with the objectionable sticker was removed as soon as it was complained of; the County disciplined Kostrick when his violence came to light; and the County interviewed employees, including Plaintiff, regarding rumors of potential violence at the Lahaina Plant.  The second element of the affirmative defense has been met.

> c.   *Plaintiff unreasonably failed to put the County on notice of his concerns and failed to avail himself of available preventative or corrective measures*

An unreasonable failure to use the County's complaint procedure "will normally suffice to satisfy the employer's burden under [this] element of the defense."  *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807-08; *Kohler*, 244 F.3d 1181-82.  Plaintiff was well-aware of the County's complaint procedures as he

---

[36] Plaintiff was also represented by the UPW Union and thus could raise claims for breaches of union contract provisions through the union grievance process.

used them to raise concerns regarding manpower shortages, transfer opportunities, and his omission from an interview list.  However, despite his familiarity, Plaintiff never used the County's procedures to raise the myriad claims he now brings before this court.  Moreover, Plaintiff had a number of other opportunities to bring his discrimination claims to the County's attention, including an interview with Marsh on April 27, 2001; a "discrimination complaint" form Plaintiff completed on May 9, 2001; a meeting with Schwind on July 11, 2001; and a meeting with Takamine on December 19, 2001.  Plaintiff failed to use any of these opportunities to inform the County of his hostile work environment and discrimination claims.[37]  In his Declaration, Plaintiff admits that he did not notify management of Kostrick's supposed "dumb Hawaiian" comments.  Pl's. Mem. in Opp'n, Kaulia Decl. ¶ 50 ("He was my supervisor, who was I supposed to tell.").  The court finds that Plaintiff's failure to give the County notice of his claims, and his resulting failure to pursue the preventative or remedial measures available to him, was unreasonable.  The final element has been met and the County is entitled to summary judgment.

\\\

---

[37]  Plaintiff asserts in his Declaration that he informed various individuals of the alleged bad acts.  However, these statements are conclusory at best and fail to provide any details such as the timing of the supposed notice and the specifics disclosed.

**D.    The County Is Entitled to Summary Judgment as to Plaintiff's HRS §§ 368 and 378 Claims Because Plaintiff Failed File a Notice of Claim as Is Required Under HRS § 46-72[38]**

Plaintiff's HRS §§ 368 and 378 state law claims against the County are barred because Plaintiff failed to timely file written notice of his claim as is required by HRS § 46-72.[39]   HRS § 46-72 provides:

> Before the county shall be liable for damages to any person for injuries to person . . . received upon any of the streets, avenues, alleys, sidewalks, or other public places of the county, or on account of any negligence of any official or employee of the county, . . . the person so injured . . . or someone in the

---

[38]   Even if Plaintiff had given sufficient notice under HRS § 46-72, the court would nonetheless grant summary judgment as to Plaintiff's state law claims.  First, the HCRC has a 180-day statute of limitations for filing HCRC Complaints; as such, many of Plaintiff's claims would be time-barred.  Second, the court would grant summary judgment to the County for Plaintiff's state law discrimination claims based on the Title VII reasoning discussed *supra*. Finally, the court would grant summary judgment as to Plaintiff's hostile work environment claim under the hostile work environment standard set forth in *Nelson v. Univ. of Haw.*, 97 Haw. 376, 390, 38 P.3d 95, 109 (2001) (a claimant must show that (1) he was subjected to verbal, physical, or visual conduct of a discriminatory nature; (2) the conduct was unwelcome; (3) the conduct was severe or pervasive; (4) the conduct had the purpose or effect of either (a) unreasonably interfering with the claimant's work performance or (b) creating an intimidating, hostile or offensive work environment; (5) the claimant believed the conduct to have such purpose or effect; and (6) the claimant's subjective belief was objectively reasonable).

[39]   The court limits HRS § 46-72's application to Plaintiff's state law claims.  *See, e.g.*, *Ellis v. City of San Diego*, 176 F.3d 1183, 1191 (9th Cir. 1999) ("A civil rights plaintiff cannot be required by state law to give a prospective defendant 'notice' of an intention to sue because § 1983, which seeks to vindicate important federally created rights, preempts state notice-of-claim statutes."); *Sadri v. Ulmer*, 2007 WL 869192, at *3-4 (D. Haw. Mar. 21, 2007) (finding that the six-month statute of limitations contained in HRS § 46-72 does not apply to § 1983 claims); *Cole v. State of Hawaii*, 2006 WL 278595, at *3-4 (D. Haw. Jan. 25, 2006)  (applying two-year statute of limitations to § 1981 claim).  *But see Tongson v. County of Maui*, Order Granting in Part and Denying in Part Defs'. Mots. for Summ. J., Civ. No. 05-00683 SOM/LEK at 18-20 (D. Haw. Dec. 15, 2006) (applying six-month statute of limitations and notice requirement contained in HRS § 46-72 to § 1983 claim against the County of Maui).

> person's behalf, shall within six months after the injuries are received, give the chairperson of the council of the county or the city clerk of Honolulu notice in writing of the injuries and the specific damages resulting, stating fully in the notice when, where, and how the injuries occurred, the extent thereof, and the amount claimed therefor.

Plaintiff's claims for discrimination under HRS §§ 368 & 378 are state law tort claims which accrued prior to the Hawaii Supreme Court's decision in *Kahale v. City & County of Honolulu*, 104 Haw. 341, 347, 90 P.3d 233, 239 (2004). As such, Plaintiff had two years (and not six months) in which to file notice of his claim of injuries and damages with the County.[40]

Plaintiff never provided written notice. According to Roy Hiraga, the County Clerk for the County of Maui, the County has "never received a claim or any other written communication from a person named Donald Kaulia, or anyone acting on his behalf." Defs'. Mot. for Partial Summ. J., Hiraga Decl. ¶ 4.

---

[40] Prior to *Kahale v. City & County of Honolulu*, 104 Haw. 341, 90 P.3d 233 (2004), a two-year notice of claim limitations tort claims applied to the counties under HRS § 46-72. *See Orso v. City & County of Honolulu*, 56 Haw. 241, 534 P.2d 489 (1975); *Salavea v. City & County of Honolulu*, 55 Haw. 216, 517 P.2d 51 (1973). In *Kahale*, the Hawaii Supreme Court overruled its previous decisions and held that HRS § 46-72 means what it says: Plaintiffs must file notice of tort claims against counties within six months of their injury before a county may be held liable. *Kahale* was a prospective decision, applying only to claims accrued post the May 12, 2004 date of issuance. Here, Plaintiff resigned April 19, 2002; because his claims accrued pre-*Kahale*, he had two years in which to file notice of his claims with the County of Maui.

HRS § 46-72 does not require that a plaintiff file his or her lawsuit within six months of sustaining an injury, nor does the notice requirement affect the ability of the Hawaii Civil Rights Commission to accept a complaint within its statutory framework. However, failure to timely file written notice with the county will bar subsequent state tort claims against the county.

Plaintiff's HRS §§ 368 and 378 claims are thus time-barred under HRS § 46-72.[41]

## V.  <u>CONCLUSION</u>

For the foregoing reason, the court GRANTS the Defendants' motions for partial summary judgment and for summary judgment.  The clerk of court is hereby directed to CLOSE the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 20, 2007.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Kaulia  v. County of Maui*, Civ. No. 05-00290 JMS/LEK, Order Granting Defendants' Motions for Partial Summary Judgment and for Summary Judgment

---

[41]  Since all substantive claims have been disposed of, the court also grants summary judgment as to the punitive damages claims against Goode, Takamine, and Kostrick.

60